```
 1                UNITED STATES DISTRICT COURT

 2                     DISTRICT OF MAINE

 3   _____

 4   U.S. BANK NATIONAL
     ASSOCIATION AS TRUSTEE FOR
 5   STRUCTURED ASSET INVESTMENT
     LOAN TRUST MORTGAGE PASS-THROUGH
 6   CERTIFICATES, SERIES 2005-4,          CIVIL ACTION

 7              Plaintiff           Docket No:  2:20-337-JAW

 8        -versus-

 9   DIANE JANELLE, SHANE JANELLE,
     and STEPHEN MONAGHAN,
10
                Defendants
11   _____

12             Transcript of Proceedings

13
     Pursuant to notice, the above-entitled matter came on for **Zoom
14   Local Rule 56(h) Conference** held before **THE HONORABLE JOHN A.
     WOODCOCK, JR.**, United States District Court Judge, in the
15   United States District Court, Edward T. Gignoux Courthouse,
     156 Federal Street, Portland, Maine, on the 23rd day of April
16   2021 at 10:04 a.m. as follows:

17   Appearances:

18   For the Plaintiff:  Brett L. Messinger, Esquire

19   For the Defendants:  Stephen Monaghan, Pro Se
                          Shane Janelle, Pro Se
20

21            Lori D. Dunbar, RMR, CRR
               Official Court Reporter
22
           (Prepared from manual stenography and
23              computer aided transcription)

24

25
```

```
 1                    (All participants via Zoom.)
 2              THE COURT:  Good morning.  This is the matter of the
 3   United States Bank National Association versus Diane Janelle,
 4   Shane Janelle, and Stephen Monaghan.  It's 20-CV-337-JAW.
 5   Would counsel for the plaintiff bank please enter his
 6   appearance.
 7              MR. MESSINGER:  Good morning, Your Honor, nice to
 8   see everybody.  Brett Messinger on behalf of U.S. Bank
 9   National Association as trustee, the plaintiff in the case.
10              THE COURT:  Good morning, Mr. Messinger.
11        Now, I have a -- we are participating by a Zoom
12   conference, and I have a box indicating that Stephen Monaghan,
13   Shane Janelle, and Von Scott are present, but I only see one
14   individual.  Who -- could you identify yourself, sir?
15              MR. MONAGHAN:  I believe I hear a man talking.  Is
16   that you, John, speaking?  This is -- I am man Stephen.  To
17   whom are you addressing, sir?
18              THE COURT:  I'm addressing the person who's
19   speaking.
20              MR. MONAGHAN:  I the man Stephen am present.  I
21   don't acknowledge who the person you refer to.
22              THE COURT:  You don't acknowledge Stephen Monaghan?
23              MR. MONAGHAN:  I believe -- I'm not sure who you
24   are speaking -- I am the man Stephen, and we've given you
25   evidence of pieces of paper with that symbol or name.  It's
```

```
 1   been entered into the court Wednesday.  So if you're referring
 2   to that as the defendant, you have -- you have those pieces of
 3   paper.  I am not an accommodating party to a legal or
 4   commercial entity.  I am present as a man.
 5           THE COURT:  Well, I don't know how you want me to --
 6   to address you, sir.  Can you tell me how you would like me to
 7   address you?
 8           MR. MONAGHAN:  The man Stephen.
 9           THE COURT:  All right.  Is there any -- are there
10   any other human beings in your room?
11           MR. SCOTT:  I'm Von Scott.
12           THE COURT:  Okay.
13           MR. MONAGHAN:  This is Shane Janelle and he has a
14   hearing difficulty, so if you would read his message.  It
15   reads:  I cannot hear you.  I wish and require all
16   communications in writing.  That is from the man Shane
17   Janelle.
18           THE COURT:  Does he -- does Mr. Janelle have a
19   hearing problem?
20           MR. MONAGHAN:  Yes, he does.  Are you in possession
21   of our paperwork we submitted?  It's your PACER EF 73.  This
22   is on Exhibit A, the notice of conditions presents.
23           THE COURT:  Is Diane Janelle present?
24           MR. MONAGHAN:  Diane is not here.  And with that
25   notice also is the contracts that explain how the man Von is a
```

1    man of interest and that --
2              MR. SCOTT:  I have power of attorney for the
3    Janelles as well, to speak on their behalf.
4              MR. MONAGHAN:  Those contracts were initiated three
5    months prior to the purported commencing of this action.  You
6    have those in part of Exhibit A which is document No. 73.  It
7    starts with Page 708 and continues to my Page 41, which is
8    PACER --
9              THE COURT:  Let me describe what we're doing here;
10   then we can decide how to proceed.
11      On September 23, 2020, U.S. Bank as trustee filed a
12   complaint in this court.  The complaint describes the
13   background, saying it involves U.S. Bank's mortgage on
14   property owned by Diane and Shane Janelle at 3 -- at 439 Pool
15   Street in Biddeford.  The complaint alleges that the Janelles
16   borrowed $228,000 from the -- from Finance America, which was
17   secured by a mortgage on January 28, 2005; that the mortgage
18   and note were ultimately assigned to U.S. Bank; that the
19   Janelles defaulted on their loan and U.S. Bank foreclosed in a
20   civil action in State of Maine District Court in Biddeford.
21   The foreclosure went to trial as alleged on May 17, 2019, and
22   the State of Maine District Court entered judgment on July 2,
23   2019, in favor of U.S. Bank.  The total sum was at that time
24   $474,795.01 with the right to sell 439 Pool Street by public
25   sale after a 90-day redemptive period expired.

1          After July 2, 2019, according to the complaint the
2    Janelles and Stephen Monaghan sent a -- sent a number of cease
3    and desist orders or notices to the U.S. Bank, and ultimately
4    on August 18, 2020, Stephen Monaghan filed a discharge and
5    other documents in the York County Registry of Deeds.  U.S.
6    Bank alleges that the documents were forged and fraudulently
7    recorded and they asked for relief.  I did receive a series of
8    what I would term unconventional filings from the Janelles and
9    from Mr. Monaghan and have -- those have been recorded or
10   docketed in the court docket.
11         On March 30, 2021, I received a notice of intent to file
12   a motion for summary judgment from U.S. Bank, and as a
13   consequence of that I issued a procedural order dated
14   March 31, 2021, ordering U.S. Bank to file a short memorandum
15   pursuant to Local Rule 56(h).  U.S. Bank did so on April 2,
16   2021, setting forth the issues that it intends to present and
17   indicating that it intended to file a record of approximately
18   200 pages.
19         The purpose of this Rule 56(h) conference is really just
20   to set deadlines for the filing of U.S. Bank's motion,
21   statement of undisputed material facts, and to set a response
22   date for the defendants and then a reply date.  Once we have
23   completed that, I will issue an order establishing those
24   deadlines and will expect those deadlines to be complied with.
25         Mr. Messinger, do you have anything to add at this

```
 1  point?
 2           MR. MESSINGER:  No, Your Honor.  I just want to
 3  point out to the Court that as part of the procedural order
 4  you had asked me to meet and consult with the defendants in
 5  this case.  I -- I have an e-mail from Mr. Janelle, which I
 6  circulated a number -- a dial-in number for him to give to his
 7  wife and the other parties.  I did not have an e-mail for the
 8  other parties until just yesterday or today.  I called in,
 9  along with my associate, Ms. Lacombe, to that number, and the
10  Janelles and Mr. Monaghan did not call in.  We waited
11  approximately ten minutes before we terminated the call.  So I
12  didn't want the Court to think that I did not try to narrow
13  some of the issues for summary judgment pursuant to that
14  procedural order.
15           THE COURT:  All right, thank you for that
16  clarification.
17      Do you have anything -- I guess I should refer to you as
18  the man Steve?
19           MR. MONAGHAN:  I am man Stephen, saying Brett
20  Messinger, the man acting as attorney, Elizabeth Lacombe, the
21  woman acting as attorney, do I and the Janelles harm with
22  Shane and Diane the woman and the man by trespass by way of
23  forgery that interferes with our right to property.  The
24  forgery exhibit is this complaint, EF 1, dated 9/23/2020.  And
25  together I wish, require, and order the restoration of our
```

```
 1    property.
 2         Is there a man that says my claim, our claim, is untrue?
 3    Going once.  Is there a man saying our claim is untrue?
 4    Twice.  Is there a man here or woman here that says our claim
 5    is untrue?  Three times.
 6         May the court record reflect that no man has appeared to
 7    say that we have done wrong and to say that our claim is
 8    untrue, that there is a -- this action is based on fraud, and
 9    the primary key of fraud is that there is no ownership by way
10    of MERS if MERS has no power to convey or assign the
11    fraudulent documents in -- well, actually there's been only
12    one evidencing of an assignment but there are two pieces.  And
13    the initial one, which was an assignment, I have noted in my
14    evidence to back it 6-3, Exhibit C, I believe it is.  And it
15    shows that there was a recorded MERS assignment but MERS has
16    no power to record so that's a fraudulent document, so at no
17    time it had --
18              MR. SCOTT:  They had no power to assign.
19              MR. MONAGHAN:  Yes, Von, go ahead.
20              MR. SCOTT:  They had no power to assign.  They only
21    had powers under the Greenleaf issue to put the mortgage into
22    the county record.  That was it.  According to Greenleaf they
23    never had the authority to forward in any manner or fashion by
24    way of assigning, and that's by way of Greenleaf.  So it was
25    never assigned.  Therefore, they unlawfully foreclosed.
```

```
 1    Therefore, the whole action itself from the beginning is void.
 2    It's that simple.
 3             THE COURT:  Mr. --
 4             MR. SCOTT:  So he's forwarding a fraudulent action
 5    to your court.
 6             THE COURT:  Mr. Scott --
 7             MR. MONAGHAN:  I have a correction, too.  It was my
 8    Exhibit D on document 6-5 dated 10/15/2020.
 9             THE COURT:  Mr. Scott, I appreciate your words, but
10    you are not authorized as a matter of law to act as an
11    attorney on behalf of the Janelles in this case.  The law is
12    quite clear.  I know you're --
13             MR. SCOTT:  Power of attorney doesn't allow me to
14    speak in your court?
15             THE COURT:  It does not, not on behalf of a party.
16    You'd be practicing law.
17             MR. SCOTT:  I'm not practicing; I would never do
18    that.
19             THE COURT:  Right.  Well, that -- that is what
20    you're doing by making legal argument before the Court.  So
21    I'm just advising you that you can't do that.  There is a --
22    there are a couple of cases if you want to look them up.
23             MR. SCOTT:  I'd love to.
24             THE COURT:  A power of attorney does not authorize
25    you to act on behalf of another individual; otherwise, people
```

```
 1    with powers of attorney would be appearing in court as
 2    attorneys.  One case is Haynes versus Jackson.
 3              MR. SCOTT:  Haynes versus Jackson.
 4              THE COURT:  Which is 2000 ME 11.
 5              MR. SCOTT:  2000 ME 11.
 6              THE COURT:  And more recently State versus Rupert.
 7              MR. SCOTT:  What was the name on that?
 8              THE COURT:  State versus Rupert, R-U-P-E-R-T.
 9              MR. SCOTT:  P-E-R-T.
10              THE COURT:  Which is 2017 ME 181.
11              MR. SCOTT:  2017.
12              THE COURT:  181.  So I just have to tell you, I have
13    to enforce the law here, and the law does not allow you as
14    having a power of attorney to speak on behalf of another
15    individual because it would constitute the unauthorized
16    practice of law, which is a Class C crime in Maine, and I
17    don't want to see you get into any trouble.
18              MR. SCOTT:  Okay.  So, then, the other issue I have,
19    then, I should be an interested party because also at the same
20    time they signed that power of attorney they also signed their
21    rights to the deed and the mortgage over to me.  So at that
22    time I became an interested party and should be an interested
23    party and would ask this Court to accept me as an interested
24    party.
25              THE COURT:  You're going to have to make a formal
```

1    motion to that effect, and the --
2            MR. SCOTT:  I just did it verbally and I will write
3    you a motion to do so.
4            THE COURT:  You're going to have to make -- don't
5    interrupt me, sir.
6            MR. SCOTT:  Yes, thank you.
7            THE COURT:  You're going to have to make a formal
8    motion to that effect, and Mr. Messinger on behalf of the bank
9    has an opportunity to object if he wishes to do so.
10           MR. SCOTT:  Yeah.
11           THE COURT:  That's the way we do things in court.
12           MR. MONAGHAN:  Speaking to articles of authority and
13   powers of attorney, I don't see anything in the record that
14   indicates that the trust has come to the service with a man or
15   a woman that has the authority to hire counsel.  And I don't
16   see any power of attorney from that said man or woman that
17   grants either Elizabeth or Brett acknowledgment that they are
18   counsel for the purported plaintiff.  Do you see that, sir?
19           THE COURT:  Well, I'm not here to answer your
20   questions.
21           MR. MONAGHAN:  The question is directed to Brett or
22   Elizabeth.  Elizabeth, can you help me?  I don't see that in
23   the filings.  Are they in there?  Are you bearing witness for
24   somebody?  Are you --
25           MR. MESSINGER:  I will answer any questions which

```
 1    are directed by Your Honor to answer -- for me to answer.
 2    Otherwise I make it a practice from a matter of
 3    professionalism not to address people directly in a court.  I
 4    won't address it to you.
 5              MR. MONAGHAN:  Let me just recap what I heard.  I
 6    can't ask the -- the man acting as the judge questions, and
 7    you want me to have him direct you to ask you questions.  Is
 8    that correct?  Is that what I heard?
 9              THE COURT:  We're moving along.  When would you like
10    to file your motion for summary judgment, Mr. Messinger?
11              MR. MESSINGER:  Your Honor, if I were to have 30
12    days that would be sufficient.  I'll try to get it in sooner
13    than that.
14              THE COURT:  What is 30 days from today?
15              THE CLERK:  It would be May 24th.  The 23rd is a
16    Sunday.
17              THE COURT:  Okay.
18              MR. MONAGHAN:  Point of order, where is the standing
19    in this case?  I don't -- do we have a contract?  Where is the
20    contract?  How am I -- why am I here?
21              MR. MESSINGER:  Your Honor -- Your Honor, just to
22    answer your question, May 21st would be fine.  I won't need --
23              THE COURT:  May 21?  Okay.  The plaintiff will file
24    motion for summary judgment by May 21, together with a
25    statement of undisputed material fact.
```

1      The man Steve, how would -- when would you like to
2  respond?  You have a right to respond under the rules to the
3  motion.  When would you like to respond?
4           MR. MONAGHAN:  Many times I've submitted requests
5  for evidence of a contract and in a fashion that I can
6  understand.  I don't speak legalese.  Can we talk man to man
7  here?
8           THE COURT:  I asked you a question.  When would you
9  like to respond?
10           MR. MONAGHAN:  Is there a man speaking?  Is that
11  you, John?
12           THE COURT:  I'm asking you a question, and I need an
13  answer.  Otherwise I'll just set the time --
14           MR. MONAGHAN:  For the record, the man John has
15  asked Stephen a question, and my answer is I don't understand
16  how I could participate if I don't speak legalese, and I
17  don't -- it's a foreign language to me.  I don't have the
18  competency to be -- to participate and bear the burden of a
19  language.  I don't see any laws that I'm required to speak.
20  How do I answer the questions, sir?
21           THE COURT:  All right, I'm going to set 21 days from
22  May 21, which will be what date, Teagan?
23           MR. MONAGHAN:  Can you explain what my duties and
24  obligations are for that?  I don't understand --
25           THE COURT:  I will give you an overview in a second,

1  sir.  I just need the date first.
2         THE CLERK:  June 11th.
3         THE COURT:  June 11 will be the date that you are to
4  respond to the motion for summary judgment and to the
5  statements of undisputed material fact.  And then when would
6  you like to file -- and then the same goes for Mr. Janelle,
7  who apparently is in the room but can't hear me.  I'll issue
8  an order that will be a line order on the docket so that he
9  will be able to review it and read it.
10         MR. MONAGHAN:  Is there a man here today with a true
11  bill of sworn payoff so we can settle up?  I claim there is no
12  controversy.  Is there a payoff statement today?  Is there a
13  payoff statement?
14         THE COURT:  The last --
15         MR. MONAGHAN:  One more time, is there a payoff
16  statement from a man --
17         THE COURT:  Don't interrupt me.  Don't interrupt me,
18  sir.  It's disrespectful to interrupt me.  I need to set a
19  date for your reply, Mr. Messinger.
20         MR. MESSINGER:  Fourteen days after June 11th, which
21  is the 25th.
22         THE COURT:  June 25th.  Okay.
23      As far as your question about the process, I can't
24  advise you, Mr. Monaghan, or the man Steve or the man Shane or
25  Mr. Janelle how to practice.

```
 1              MR. MONAGHAN:  Not Mr. Janelle, it's the man Shane.
 2              THE COURT:  Well, whatever --
 3              MR. MONAGHAN:  Not Mr. Monaghan.  You made that
 4   mistake earlier today; I want to correct that for the record.
 5              THE COURT:  I can't advise you as to how to proceed.
 6   That would require me to act as your attorney, and I'm not
 7   acting as your attorney.  I'm acting as the judge and I have
 8   to remain neutral.  I can refer you to a couple of rules that
 9   are a matter of federal civil procedure that will be enforced
10   during the course of the motion for summary judgment.
11              MR. MONAGHAN:  I would like to vocalize my demand
12   for a trial by jury common law.
13              THE COURT:  There's a Federal Rule of Civil
14   Procedure 56 which allows a party that believes that it is
15   entitled to judgment as a matter of law and asserts that there
16   are no genuine issues of material fact in dispute.  And that
17   is the standard for the motion for summary judgment.
18              MR. MONAGHAN:  Is there a law that says a man must
19   understand rules of civil procedure if a man is just being a
20   man?
21              THE COURT:  The -- the analog to it in the district
22   court, there is a separate set of rules under Local Rule 56,
23   and that's available on the District of Maine website that
24   will give --
25              MR. MONAGHAN:  Is there a contract that obligates me
```

```
 1    to the rules of civil procedure?
 2              THE COURT:  That will give you an overview of the
 3    requirements --
 4              MR. MONAGHAN:  Is there a contract that obligates
 5    me, a man, to rules of civil procedure?
 6              THE COURT:  There will --
 7              MR. MONAGHAN:  Is there a contract?
 8              THE COURT:  Don't interrupt me.  Do not interrupt
 9    me.  It's very disrespectful.  I'm trying to answer your
10    question, and I've referred you to the rules of civil
11    procedure and the local rules of -- the local rules of civil
12    procedure as well.  And you can obtain those rules -- the
13    federal rules are available in numerous forms on the Internet,
14    and the local rules are available on the District of Maine
15    website.
16              MR. MONAGHAN:  I never heard an answer to my
17    question.  Is that a no?
18              THE COURT:  Those will be the rules that are applied
19    to every party in ruling on matters of procedure --
20              MR. MONAGHAN:  Is a man a party?
21              THE COURT:  -- who appears before -- Mr. Monaghan or
22    the man Steve, do not interrupt me.  You are being highly
23    disrespectful.  You keep interrupting me and I will not stand
24    for it.  I am telling you that I apply those rules to all
25    parties before me.  That includes you, it includes the
```

```
 1    Janelles, and it includes U.S. Bank.
 2         Is there anything further that we need to discuss from
 3    your perspective, Mr. Messinger?
 4              MR. MESSINGER:  No, Your Honor.
 5              THE COURT:  Is there anything further from the
 6    defendants?
 7              MR. MONAGHAN:  May the record reflect that no
 8    contract has been evidenced with the man Stephen and this
 9    court and the Janelles or Shane or Diane or Von.
10              THE COURT:  All right.  I will set the deadlines as
11    indicated, and I look forward to the filings of the parties in
12    due course.  Court will stand in recess.
13              MR. MESSINGER:  Good morning, everybody.
14                   (Time noted:  10:29 a.m.)
15                     C E R T I F I C A T I O N
16    I, Lori D. Dunbar, Registered Merit Reporter, Certified
17    Realtime Reporter, and Official Court Reporter for the United
18    States District Court, District of Maine, certify that the
19    foregoing is a correct transcript from the record of
20    proceedings in the above-entitled matter.
21    Dated:  July 9, 2021
22              /s/ Lori D. Dunbar
23              Official Court Reporter
24
25
```