UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

U.S. BANK N.A., AS TRUSTEE )
FOR STRUCTURED ASSET )
INVESTMENT LOAN TRUST )
MORTGAGE PASS-THROUGH )
CERTIFICATES, SERIES 2005-4, )
                              )
        Plaintiff,            )
                              )
    v.                        )        No. 2:20-cv-00337-JAW
                              )
DIANE JANELLE,                )
SHANE JANELLE,                )
and STEPHEN MONAGHAN,         )
                              )
        Defendants.           )

**AMENDED ORDER ON PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT**[1]

A bank filed a foreclosure action against a couple in Maine state court and

obtained a foreclosure judgment against the couple. The couple, with the assistance

of another person, filed three documents with the York County Registry of Deeds,

supposedly acting on behalf of the bank and purporting to discharge the mortgage

and waive foreclosure. The bank subsequently filed this lawsuit, seeking an order

declaring the filed documents to be void and stricken from the public records, and

seeking damages for fraud. The couple and other person responded by flooding the

Court's docket with indecipherable and unconventional filings.

---

[1]     The Court's initial order inadvertently ordered the Clerk to enter a "default judgment" on
Count I of the Complaint instead of a "declaratory judgment." *See Order on Pl.'s Mot. for Summ. J.*
at 22 (ECF No. 91). The Court amends its order to reflect that it is entering a declaratory judgment,
not a default judgment, against the Defendants.

The bank now moves for summary judgment, maintaining that its uncontested factual allegations entitle it to judgment as a matter of law. The Court agrees in part and grants the bank's motion for summary judgment on the declaratory judgment count. The Court also grants the bank's motion for summary judgment on the liability aspect of the fraud count, but dismisses the motion for summary judgment on fraud damages because the parties have a right to a civil jury on that issue.

## I.    PROCEDURAL HISTORY

On September 23, 2020, U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-4 (U.S. Bank) filed a complaint against Diane Janelle and Shane Janelle (the Janelles), as well as Stephen Monaghan, collectively "the Defendants," seeking an order declaring that a certain "Discharge of Mortgage, Waiver of Foreclosure and Administrat[iv]e Declaratory Judgment," filed by the Defendants in the York County Registry of Deeds, is "(a) unauthorized, (b) fraudulent, (c) forged, (d) wrongfully and fraudulently recorded and, as a result, (e) null and void *ab initio.*" *Compl.* ¶ 1 (ECF No. 1). The Complaint also sought "a judgment against Defendants for the damages caused [U.S. Bank], plus punitive damages and attorneys' fees." *Id.*

On October 15, 2020, the Janelles and Mr. Monaghan filed motions to dismiss. *Dilatory Pet. to the Compl.* (ECF No. 6); *Mot. to Dismiss* (ECF No. 11). On November 4, 2020, the Court denied the motions, concluding "[t]he Defendants' motions to dismiss have no merit." *Order on Defs.' Mot. to Dismiss* at 3 (ECF No. 16). On November 10, 2020, Mr. Monaghan and the Janelles filed motions for

reconsideration. *Judicial Notice, Certification of Wrongdoer Default, Order # 16 Is Void for Want of Facts and Authority* (ECF No. 17); *Judicial Notice, Certification of Wrongdoer Default* (ECF No. 18). On December 9, 2020, the Court denied the motions for reconsideration. *Order* (ECF No. 24).

The Defendants proceeded to file dozens of odd documents with the Court, mostly difficult to decipher "notices," which the Court repeatedly struck or dismissed. *See Order Striking Pleading* (ECF No. 26); *Order on Pending Mots.* (ECF No. 38); *Order* (ECF No. 42); *Order* (ECF No. 44); *Order on Mot. to Correct Clerical Error* (ECF No. 56); *Order* (ECF No. 57); *Order on Defs.' Mots.* (ECF No. 58); *Order* (ECF No. 60); *Order* (ECF No. 62); *Order* (ECF No. 64); *Order* (ECF No. 66).

After an April 23, 2021, Local Rule 56(h) conference held by Zoom, on May 19, 2021, U.S. Bank filed a motion for summary judgment seeking an order "(i) declaring the Discharge of Mortgage, Waiver of Foreclosure and Administrative Order are void; (ii) requiring the Discharge of Mortgage, Waiver of Foreclosure and Administrative Order be stricken from the Register of Deeds; and (iii) entering judgment in favor of [U.S. Bank] and against the Defendants, both joint and severally, in an amount $41,578.48; which consists of the amount of its attorneys' fees and costs incurred in this action; plus that amount over again as punitive damages." *Pl.'s Mot. for Summ. J.* at 11 (ECF No. 76) (*Pl.'s Mot.*). Along with the motion for summary judgment, U.S. Bank filed a statement of facts. *Pl.'s Statement of Undisputed Facts* (ECF No. 77) (PSMF). In addition to filing more frivolous documents, on May 21, 2021, the Defendants responded in opposition to U.S. Bank's motion for summary judgment.

*Notice: Reply to EF 76, 77-0 to 77-3* (ECF No. 82) (*Defs.' Opp'n*). On June 17, 2021, U.S. Bank filed a reply. *Pl.'s Reply Mem. and Points of Authority in Further Supp. of Its Mot. for Summ. J.* (ECF No. 86) (*Pl.'s Reply*).

## II. THE LOCAL RULE 56(h) CONFERENCE

On April 23, 2021, the Court held a bizarre Local Rule 56(h) pre-filing conference via Zoom. *Min. Entry* (ECF No. 75); *Tr. of Proceedings* (ECF No. 90) (*Local Rule 56(h) Tr.*).[2] At the Defendants' end of the videoconference, three people appeared: (1) Mr. Monaghan, (2) Shane Janelle, and (3) a man who identified himself as "Von Scott."[3] Diane Janelle, the other Defendant, was not present. Mr. Monaghan did most, but not all, the talking. Mr. Janelle said nothing. Mr. Scott spoke briefly on behalf of the Janelles.

As his filings suggest and as this videoconference demonstrates, Mr. Monaghan maintains markedly idiosyncratic views about court procedure. When the Court attempted to address him as Mr. Monaghan, he refused to be recognized

---

[2] An example of the Defendants' odd handling of this case is the separate transcript of the Rule 56(h) videoconference that they prepared by a court reporting service, and which they filed with the Court. *See notice: decl. of discharge*, Attach. 3, *Rule 56 Conf.* at 1-18 (ECF No. 79) (*Defs.' Tr.*). The Court does not know what recording the Defendants provided to the court reporting service; however, the Defendants' transcript is obviously erroneous in part. For example, the transcript has the Court referring to itself as "John," which the Court did not do at this conference. *Defs.' Tr.* at 9:5-6. An accurate transcript of the Rule 56(h) conference has been filed by the court reporter who participated by videoconference at the Rule 56(h) conference. *See Tr. of Proceedings* (ECF No. 90).

[3] On April 21, 2021, two days before the Local Rule 56(h) conference, the Janelles, Mr. Monaghan, and "Von Scott" filed a series of documents purporting to establish that Von Scott had authority to act as the attorney-in-fact for the Defendants. *Notice: Presents* (ECF No. 73); *id.*, Attachs. 1-5. An attachment to this filing titled "Affidavit of Truth" states that the Janelles give "all [their] rights to the attached deed to [the] property Located at 439 Pool Street, Biddeford, Maine to Von Scott of the Lindahl clan." *Id.*, Attach. 1, *Ex. A* at 13. The Court put quotation marks around Von Scott's name because, in the vernacular espoused by Mr. Monaghan (which Von Scott may be adopting), a person's surname is occasionally referred to as a clan and the person's first name identifies the individual. Thus, Von Scott, who identifies himself as "of the Lindahl clan" may bear more traditional name Von Scott Lindahl or it may be that his more traditional name is Von Scott. The Court is uncertain but has used Von Scott as it appears to be his preferred name for purposes of this case.

and demanded that the Court refer to him as "the man, Stephen." *Rule 56(h) Tr.* at 2:10-3:8. Mr. Monaghan also refused to address the Court as "judge" or "your honor" and instead referred to this Judge as "the man, John." *Id.* at 2:15-17; 12:4-20. During the conference, Mr. Monaghan repeatedly interrupted the Court and the Court was required to warn him not to interrupt because it was disrespectful. *Id.* at 13:14-19; 15:2-15; 15:18-16:1.

Shane Janelle (or a person Mr. Monaghan identified as Shane Janelle) was dressed in sunglasses and a baseball cap, and wore a mask covering the lower part of his face. He was holding a handwritten sign, which Mr. Monaghan read, which said: "I cannot hear you. I wish and require all communications in writing." *Id.* at 3:14-16. Mr. Monaghan represented to the Court that Mr. Janelle had a hearing problem. *Id.* at 3:13-22. Mr. Janelle said nothing during the conference.

Von Scott attempted to argue issues of law to the Court on behalf of Shane and Diane Janelle, contending he was authorized to do so under a power of attorney. *Id.* at 7:18-9:17. Citing caselaw, the Court informed Mr. Scott that, as he was not a practicing attorney, he was not allowed to posit legal arguments on behalf of the Janelles under a power of attorney and if he continued to do so, he could be engaging in the unauthorized practice of law. *Id.*

With some difficulty, the Court set the briefing schedule for U.S. Bank's proposed motion for summary judgment. *Id.* at 11:9-13:22.

## III. FACTUAL BACKGROUND

On May 19, 2021, U.S. Bank filed a statement of material facts. The Defendants did not file a separate statement of material facts, but their opposition brief includes a "rebuttal" of U.S. Bank's statement of facts. *See Defs.' Opp'n* at 6-12. However, the Defendants do not contest any of the allegations of fraud asserted by U.S. Bank. From what the Court can tell, the Defendants' rebuttal appears to challenge the validity of the foreclosure judgment, but the Defendants provide no support or record citations for their conclusory assertions. *See* D. ME. LOC. R. 56(f) ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment"). Moreover, the validity of the foreclosure judgment is not at issue here. Thus, because the Defendants failed to contest U.S. Bank's statement of facts, the Court deems it admitted. *See id.* ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted").

### A. The Foreclosure

On January 28, 2005, the Janelles entered into a loan transaction with Finance America, LLC, by which Finance America lent the Janelles $228,000. PSMF ¶ 1. The loan was evidenced by a mortgage note and secured by a mortgage on the Janelles' property located at 439 Pool Street in Biddeford, Maine. PSMF ¶ 2; *see id.*, Attach. 1, *Aff. of Kevin Flannigan* (*Flannigan Aff.*) at 7-10 (*Note*), and 12-29 (*Mortgage*). The Note is endorsed in blank and is in U.S. Bank's possession. PSMF ¶ 5. The Mortgage

was assigned by quitclaim assignment from BNC Mortgage LLC, as successor by merger to Finance America, to U.S. Bank. PSMF ¶ 6; *see Flannigan Aff.* at 31-32 (*Quitclaim Assignment*).

The Janelles defaulted on their payment obligations under the Note and Mortgage, and U.S. Bank filed a foreclosure action against them in the Maine District Court in Biddeford, Maine, under Docket No. BIDDC-RE-16-090, in the case captioned *U.S. Bank National Association as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-4 v. Diane Janelle, et al.* PSMF ¶ 8. The foreclosure action proceeded to trial on May 17, 2019. PSMF ¶ 9. On July 2, 2019, the Maine District Court entered a judgment in favor of U.S. Bank and against the Janelles for $474,795.01, plus interest at the rate of $48.71 per day, and the right to sell the property at auction sale if the foreclosure judgment was not paid within ninety days of entry. PSMF ¶ 9; *see Flannigan Aff.* at 34-39 (*Foreclosure J.*). The Janelles admit the authenticity of the Note and Mortgage, and admit that no payment was ever made to U.S. Bank or its servicers on the Foreclosure Judgment. PSMF ¶ 22.[4]

---

[4] On February 15, 2021, U.S. Bank served the Defendants with requests for admission, including admissions regarding the authenticity of the Note, Mortgage, and fraudulently filed documents, as well as an admission that Mr. Monaghan lacked authority to file the documents. PSMF ¶¶ 20, 22; *see* PSMF, Attach. 3, *Aff. of Brett L. Messinger* (*Messinger Aff.*) at 5-133 (*Requests for Admission*). The Defendants failed to serve responses to the requests for admission. PSMF ¶ 23. Therefore, the Court deems the statements in the requests for admission admitted. FED. R. CIV. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney").

**B.     The Fraudulent Filings**

After the Maine District Court entered the Foreclosure Judgment, instead of paying off their mortgage and note, the Janelles sent a series of cease and desist letters to U.S. Bank.   On July 1, 2020, the Janelles, with the assistance of Mr. Monaghan, sent U.S. Bank and its mortgage servicer a document titled "Notice to Cease and Desist #1."  PSMF ¶ 11; *see Flannigan Aff.* at 41-49.  On August 3, 2020, the Janelles and Mr. Monaghan sent U.S. Bank and its mortgage servicer a document titled "Notice to Cease and Desist #2."  PSMF ¶ 13; *see Flannigan Aff.* at 51-55.  On August 17, 2020, the Janelles and Mr. Monaghan sent U.S. Bank and its mortgage servicer a third notice, titled "Notice to Cease and Desist #3."  PSMF ¶ 15; *see Flannigan Aff.* at 57-60.

On August 18, 2020, Mr. Monaghan signed, sealed and filed with the office of the York County Registry of Deeds three documents: (1) Waiver of Foreclosure, (2) Discharge of Mortgage, and (3) Administrative Declaratory Judgment.  PSMF ¶ 17; *see Flannigan Aff.* at 62-64 (*Waiver of Foreclosure*), 66-67 (*Discharge of Mortgage*), and 69-74 (*Administrative Declaratory Judgment*).   The Waiver of Foreclosure is signed by Mr. Monaghan purportedly on behalf of U.S. Bank and states that U.S. Bank "does hereby, under the terms of the ADMINISTRATIVE DECLARATORY JUDGMENT . . . waive the . . . foreclosure action and releases unto Diane Janelle and Shane Janelle . . . the Premises . . .."  *Waiver of Foreclosure* at 2.  The document states that U.S. Bank "caused this instrument to be executed today by way of necessary right, title, power and authority granted to Stephen Monaghan as per the terms of

the recorded ADMINSTRATIVE DECLARATORY JUDGMENT." *Id.* The Discharge of Mortgage was also signed by Mr. Monaghan on behalf of U.S. Bank and states that U.S. Bank "does hereby ***cancel*** and ***discharge*** said mortgage, and ***release*** unto the said **Diane Janelle and Shane Janelle** . . . forever, the premises . . . ." *Discharge of Mortgage* at 1-2 (emphasis in original). The Discharge of Mortgage further states that U.S. Bank "has caused this instrument to be executed by **Stephen Monaghan**." *Id.* at 2 (emphasis in original). Finally, the Defendants filed what they call an "Administrative Declaratory Judgment" in light of U.S. Bank's failure to respond to their cease and desist notices. *Administrative Declaratory Judgment* at 1-2. The Administrative Declaratory Judgment purportedly declares "nil debt" on the Janelles' mortgage loan, grants the Defendants "the necessary right, title, power and authority to record The Administrative Declaratory Judgment as the instrument for the lien release and discharge of the alleged mortgage," and grants the Defendants "the necessary right, title, power and authority to present the Administrative Declaratory Judgment instrument to any court as the contractual consent by estoppel of silence." *Id.* at 4.

U.S. Bank did not authorize Mr. Monaghan to file or sign these documents. PSMF ¶ 19. The filing of these documents by the Defendants is the basis for the present lawsuit. Through April 30, 2021, U.S. Bank incurred $20,789.24 in attorney's fees and expenses in litigating this case. PSMF ¶ 24; *see Messinger Aff.* at 135-167 (*Attorney Time Sheets*).

## IV.    THE PARTIES' POSITIONS

### A.    U.S. Bank's Motion for Summary Judgment

U.S. Bank moves for summary judgment, arguing that "because the facts do not support any basis under law or fact that allows the Defendants to file the Fraudulent Documents, [U.S. Bank] is entitled to an order declaring them void and for an order directing the documents to be stricken from the Register of Deeds," as well as damages for the Defendants' fraud. *Pl.'s Mot.* at 2.  U.S. Bank then recounts the facts as laid out in its statement of material facts before turning to the merits. *Id.* at 3-6.

Turning to the merits, U.S. Bank first argues that on February 15, 2021, it served the Defendants with requests for admission, and "by not responding to the request for admissions, the material facts supporting the claim are admitted." *Id.* at 7.  U.S. Bank next contends that "there is no dispute that [Mr.] Monaghan had no authority to sign the Fraudulent Documents," and therefore "[b]ecause the documents were signed and filed without authority," the Court should declare them void and strike them from the registry of deeds. *Id.* at 8.  U.S. Bank then addresses its fraud claim, asserting "the undisputed facts show that the defendants committed fraud." *Id.* at 9.  It argues that the Defendants cannot dispute that they made representations to the registry of deeds, that the representations were false, that they knew the representations were false, that the representations were made for the purpose of making the registry of deeds file the fraudulent documents, that the registry of deeds relied on the representations and filed the fraudulent documents,

and U.S. Bank was harmed.  *Id.*  U.S. Bank claims the damages are $20,789.24 in attorney's fees.  *Id.*  Finally, U.S. Bank argues that "[s]omeone who intentionally commits fraud, with actual or implied malice, is liable for punitive damages," and requests "the imposition of punitive damages by a multiple of one times its damages," for a total damage award of $41,578.48.  *Id.* at 9-11.

## B.     The Janelles and Stephen Monaghan's Opposition

The Court has mentioned that Mr. Monaghan holds some highly idiosyncratic views about courts and legal rights and responsibilities.[5]  In describing the Defendants' opposition to U.S. Bank's motion for summary judgment, the Court has done its best to place their filings in a legal context.  The Court does not know the source of Mr. Monaghan's legal positions, and of course, Mr. Monaghan is free to make whatever arguments he wishes to make before the Court.  At the same time, federal court is a court of law and this Judge has applied procedural and substantive law as it understands it to the issues in this case, and Mr. Monaghan's (and the Janelles') arguments simply are not cognizable as proper legal theories.  To set the stage, the Court abbreviates the Defendants' filings as it understands them.

The Defendants begin their response with the following:

"i": man; Shane; and; "i": woman, Diane; and; "i": man; Stephen; and; "i": man; Von say we make notice that we have no contract with this court or with the Wrongdoers or Wrongdoer Agents; say our terms of presence

---

[5]     The Court is uncertain about the Janelles' role.  Mr. Monaghan is involved in another foreclosure pending before this Court.  *See U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust v. Shannon R. Moore*, No. 2:19-cv-00157-JAW.  Many of the same obscure objections, unconventional phrasings, and indecipherable arguments pressed here by the Defendants also appear in Ms. Moore's filings with the Court.  The Court assumes (perhaps incorrectly) that Mr. Monaghan is the prime mover in the defense of this case.  Even so, the Janelles' names and signatures appear on nearly all the documents the Defendants filed with the Court so even if the Janelles have not authored them, they have authorized their filing.

are; now and always; in good faith; by restricted presence not generally ab initio; nunc pro tunc; of necessity; at and not in U.S. District Court purported 2:20-cv-00337-JAW; say i/we are idiots in language of legalese, legal fiction and rules [like manner – FRCP 44.1. Determining Foreign Law]; say we are incompetent to contract except at court of record at common law with trial by jury where the jury, the people, are the judge of fact and law [like manner – as per 7th and 9th amendment and savings to suiters clause and Maine 1820 Constitution]; as aggrieved; wronged; harmed; Claimant/s; not under the venue and/or jurisdiction of any presumed contracts, of the state, State and/or Federal Government; not an accommodating party to a legal or commercial entity; not a registered voter; not re-presented, not 'pro se'; as man/[wo]man who stand on our own [sui juris]; not citizen/s; not resident/s; not Defendant/s; not under any presumed title/s; not a "me" and not a "you"; making reply under threat duress and coercion; do not make answer as this Court has no jurisdiction and movants have no standing, no controversy; say we reserve all rights, waive none; without recourse; say we are not slave/s, not convict/s; say anyone who moves on our behalf related to this purported action will assume all the liability and be required to pay fair and just compensation to "i"; man; and; "i": woman for all orders.

*Defs.' Opp'n* at 1-2. The rest of the response is written in similar language.

From what the Court can tell, the crux of the Defendants' opposition is that they contest the underlying foreclosure, arguing that "we have no forensic evidence of a loan by Finance America, LLC, its successors or assigns or agents," "we have no evidence of 'the' note being in the possession of anyone," "we have no evidence of a lawful Quitclaim Assignment dated April 12, 2016," and "we have no forensic evidence we defaulted a loan and mortgage." *Id.* at 2. The Defendants similarly contend that "the purported state foreclosure action never commenced for want of proof of contracts" and "purported movant and its agents are moving this false claim and putting fraud onto this court and doing harm to us; we say the Administrative Declaratory Judgment, ADJ, contract is settled law res judicata and we have no

evidence that says otherwise" and "there is no contract in evidence that removes the ADJ irrevocable terms or give consent for review of ADJ contract by anyone." *Id.* at 2-3. Because they have "no evidence of a contract with the said legal Agents or this court," Defendants claim they "have neither the obligation or capacity to comply." *Id.* at 3. The Defendants next list what appears to be their own undisputed material facts; however, the facts are not supported by citations to the record as required by Local Rule 56(f). *Id.* at 3-13.

The Defendants conclude by repeating their arguments that U.S. Bank does not have authority to foreclose, asserting that "there is no controversy as this matter is already settled," referring to U.S. Bank's complaint as a "false action," and claiming U.S. Bank's attorneys "do wrong of trespass, forgery that does us harm and puts fraud on this court." *Id.* at 13. Therefore, the Defendants "require this action discharged and expunged." *Id.*

### C.    U.S. Bank's Reply

U.S. Bank replies, urging the Court to "summarily resolve this case." *Pl.'s Reply* at 2. First, it argues that "far from complying with their burden showing a genuine factual dispute, Defendants fail to cite to any deposition, document, electrically stored information, affidavit, stipulation, or anything whatsoever." *Id.* at 3. Therefore, "this Court should grant summary judgment in favor of [U.S. Bank] and against Defendants." *Id.* U.S. Bank next asserts that the Defendants' defenses are barred by res judicata because "[t]he foreclosure judgment entered in the Biddeford District Court is final, un-appealed, and binding on Defendants and

provides no basis to prevent the entry of judgment in favor of [U.S. Bank]." *Id.* at 4. "Defendants cannot claim their fraudulent filings to be privileged and proper simply because they disagree with the result of the foreclosure case and believe the defenses they failed to raise would [have] made a different result." *Id.* Finally, U.S. Bank states "there is absolutely no basis to believe the filings made by Defendants have any support in the law." *Id.* In sum, U.S. Bank concludes that "there is simply no basis, in law or fact, which would support any notion that the filing of the Discharge of Mortgage, Waiver of Foreclosure and Administrative Order was justified," and accordingly, "Defendants have failed to overcome the clear conclusion that the [fraudulent documents] were filed as part of a scheme to defraud [U.S. Bank]." *Id.* at 5.

## V. LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014) (quoting *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011)).

After the moving party "has made a preliminary showing that there is no genuine issue of material fact, the nonmovant must 'produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue.'" *McCarthy v.*

*City of Newburyport*, 252 F. App'x 328, 332 (1st Cir. 2007) (alteration in original) (quoting *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999)). The nonmoving party must provide "'enough competent evidence' to enable a factfinder to decide in its favor on the disputed claims." *Carroll v. Xerox Corp.*, 294 F.3d 231, 237 (1st Cir. 2002) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)). Then, the Court "views the facts and draws all reasonable inferences in favor of the nonmoving party," *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 (1st Cir. 2011), but disregards "[c]onclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Mancini v. City of Providence ex rel. Lombardi*, 909 F.3d 32, 38 (1st Cir. 2018) (quoting *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010)). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## VI.   DISCUSSION

U.S. Bank's Complaint contains two counts: (1) Declaratory Judgment and (2) Deceit and Fraud. *Compl.* ¶¶ 17-28. U.S. Bank argues it is entitled to summary judgment on each count of the Complaint.

### A.   Count I: Declaratory Judgment

Count I of the Complaint seeks a declaratory judgment declaring that the Discharge of Mortgage, Waiver of Foreclosure, and Administrative Declaratory

15

Judgment are void. *Id.* ¶¶ 17-22. U.S. Bank argues that because the Defendants admitted they had no authority to sign or file the documents in the Registry of Deeds, the documents should be declared void and stricken from the Registry of Deeds. *Pl.'s Mot.* at 8-9.

The Declaratory Judgment Act authorizes a federal court to grant declaratory relief in a case of actual controversy:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. The Declaratory Judgment Act "is designed to enable litigants to clarify legal rights and obligations before acting upon them." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). The Act "neither imposes an unflagging duty upon courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992). Rather, the Court has "broad discretion" to enter a declaratory judgment. *DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997).

The undisputed facts here show clear acts of fraud on the part of the Defendants that can be remedied by a declaratory judgment. U.S. Bank obtained a foreclosure judgment against the Janelles in Maine state court. In response, the Janelles and Mr. Monaghan filed three documents with the York County Registry of Deeds: (1) a Waiver of Foreclosure, (2) a Discharge of Mortgage, and (3) an

Administrative Declaratory Judgment. The documents claimed to discharge the Mortgage and waive the foreclosure, and were signed by Mr. Monaghan purportedly on behalf of U.S. Bank, but in fact he had no such authority. Thus, the documents are void. *See* 33 M.R.S. § 551 ("A mortgage only may be discharged by a written instrument acknowledging the satisfaction thereof and signed and acknowledged by the mortgagee or by the mortgagee's duly authorized officer or agent, personal representative or assignee"). The Defendants' actions clouded U.S. Bank's title and impeded its right to enforce the Mortgage and Foreclosure Judgment.

The Defendants do not dispute the alleged fraudulent acts. Instead, they merely argue the Foreclosure Judgment issued by the Maine District Court is invalid. Their argument fails for four reasons. First, in the case of *U.S. Bank National Association as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-4 v. Diane Janelle*, Docket No. BIDDC-RE-16-090, the Maine District Court issued the Foreclosure Judgment in favor of the Plaintiff and against the Janelles on July 2, 2019 and the Foreclosure Judgment is therefore final and enforceable. Second, as previously discussed, the Defendants make only conclusory assertions regarding the validity of the Foreclosure Judgment, and cite no evidence in the record. Third, by failing to respond to U.S. Bank's requests for admission, the Defendants admitted the validity of the Foreclosure Judgment. Fourth, even if the Foreclosure Judgment suffered some defect (and there is no evidence that it does), the Defendants would not be entitled to file fraudulent documents with the Registry of Deeds. If the Defendants disagreed with the

Foreclosure Judgment, they should have challenged that decision in the Maine District Court or appealed that decision to a higher court, instead of committing fraud on the York County Registry of Deeds. In short, the Defendants may not justify their fraudulent conduct.

A declaratory judgment declaring the fraudulent documents void would clarify U.S. Bank's right to enforce the Foreclosure Judgment. Given the undisputed fraudulent actions by the Defendants, the Court grants U.S. Bank's summary judgment as to Count I of the Complaint. *See Airway Leasing, LLC v. Mtglq Inv'rs, L.P.*, C.A. No. 18-516JJM, 2021 U.S. Dist. LEXIS 58018, at *10-11 (D.R.I. Mar. 26, 2021), *aff'd*, 2021 WL 1910811 (D.R.I. May 12, 2021) (granting a motion for summary judgment for a declaratory judgment to establish that the interest of a party in real estate as the holder of a mortgage is valid and enforceable).

**B.    Count II: Fraud**

Count II of the Complaint alleges fraud against the Defendants and seeks compensatory and punitive damages. *Compl.* ¶¶ 23-28. U.S. Bank argues that the Defendants' actions amount to fraud under Maine law and claims it incurred $20,789.24 in attorney's fees as of April 30, 2021. *Pl.'s Mot.* at 9. U.S. Bank further seeks punitive damages in the same amount as the attorney's fees because the Defendants committed their fraud with malice. *Id.* at 9-11.

**1.    Liability**

The Defendants do not dispute the alleged fraudulent actions. The admitted facts show that the Defendants made a false representation when they filed the

Waiver of Foreclosure, Discharge of Mortgage, and the Administrative Declaratory Judgment with the York County Registry of Deeds, purporting to be U.S. Bank and falsely discharging the mortgage and waiving the foreclosure. The Defendants knew that they were not authorized by U.S. Bank to file the documents. The Defendants' actions clouded U.S. Bank's right to foreclose and caused U.S. Bank to initiate and litigate this lawsuit. Thus, in light of the Defendants' admitted fraudulent conduct, the Court grants U.S. Bank's motion for summary judgment against the Defendants as to the liability portion of Count II of the Complaint and the Court concludes that the Defendants are liable to U.S. Bank for fraud.

### 2. Damages

#### a. Attorney's Fees

Questions remain regarding damages, however. Turning first to its claim for attorney's fees, U.S. Bank's statement of material fact paragraph 24 posited that it had incurred $20,789.24 in attorney's fees in litigating this case. PSMF ¶ 24. The Defendants did not admit, deny or qualify this assertion as required by Local Rule 56(c). As the Defendants failed to properly controvert this assertion, it is deemed admitted. D. ME. LOC. R. 56(f) ("Facts contained in a supporting . . . statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted").

U.S. Bank next argues that it is entitled to $20,789.24 in attorney's fees as part of its judgment in the fraud count. U.S. Bank failed to demonstrate, however, that it is entitled to an award of attorney's fees on the fraud count. Known as the "American

Rule," "[t]he universal rule in the United States is that 'absent statute or enforceable contract, litigants pay their own attorneys' fees.'" *Vance v. Speakman*, 409 A.2d 1307, 1311 (Me. 1979) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975)). In Maine, an award of attorney's fees "may be based on '(1) a contractual agreement between the parties; (2) a specific statutory authorization; or (3) the court's inherent authority to sanction serious misconduct in a judicial proceeding.'" *Sebra v. Wentworth*, 2010 ME 21, ¶ 17, 990 A.2d 538, 544 (quoting *Truman v. Browne*, 2001 ME 182, ¶ 13, 788 A.2d 168, 171).

In *Colquhoun v. Webber*, 684 A.2d 405 (Me. 1996), the plaintiffs brought a slander of title claim after the defendant recorded a quitclaim deed in the Lincoln County Registry of Deeds that purportedly conveyed her interest in land that she knew was claimed by the plaintiffs. *Id.* at 408. After a jury-waived trial, the trial court awarded the plaintiffs attorney's fees as damages on their slander of title claim. *Id.* at 413. On appeal, the Maine Supreme Judicial Court vacated the judgment. *Id.* The Court determined that while "the prevailing party in a slander of title action may recover as special damages those attorney fees and expenses accruing from removing the cloud on the title," the trial court "based its award of special damages on the legal cost of *prosecuting* the slander of title action." *Id.* (emphasis in original). "Because the court computed its award of damages for the slander of title action based on the costs of prosecuting the slander of title count and not based on the expense of measures reasonably necessary to counteract the publication of the slander," the

Court vacated the damage award and remanded for a proper determination of damages. *Id.*

Here, U.S. Bank similarly seeks to recover for the attorney's fees it incurred in prosecuting its fraud claim, as opposed to the costs of removing the cloud on their title. U.S. Bank has not shown why under Maine law it is entitled to attorney's fees for the prosecution of its fraud claim. Thus, although the Court concludes that U.S. Bank did incur $20,789.24 in attorney's fees, the Court also concludes that it has not satisfactorily demonstrated that its attorney's fees are an appropriate measure of damages for the Defendants' fraud.

### b. Punitive Damages

U.S. Bank further asks the Court to impose punitive damages. In its memorandum of law, U.S. Bank asserts that the Court should impose a punitive damages award in the same amount as its attorney's fees. *Pl.'s Mot.* at 11. The Court balks at awarding punitive damages in a certain amount in this case for two reasons.

First, "[u]nder Maine law, punitive damages may be imposed if a tortfeasor acts deliberately with 'express' or 'actual' malice, or so outrageously that malice can be implied." *Shannon v. Sasseville*, 684 F. Supp. 2d 169, 173 (D. Me. 2010) (citing *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985)). The standard of proof is "clear and convincing evidence." *Id.* While it is possible that persons who commit fraud should be held liable for some amount of punitive damages, an award of twice the amount of U.S. Bank's incurred attorney's fees strikes the Court as potentially problematic. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580-83 (1996). For

example, the First Circuit has taught that, in evaluating the constitutionality of a punitive damage award, one of the guideposts is to "to compare the amount of punitive damages to the amount of compensatory damages awarded." *Bisbal-Ramos v. City of Mayagüez*, 467 F.3d 16, 27 (1st Cir. 2006) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003); *Rodríguez-Marín v. Rivera-González*, 438 F.3d 72, 85 (1st Cir. 2006)). Here, there is, as of yet, no established award of compensatory damages to which such a comparison can be made.

A second issue is that the proper amount of punitive damages is a factual finding and must be resolved by a factfinder. This is not a claim for a sum certain or a claim for liquidated damages. *See KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 19-20 (1st Cir. 2003). It is, instead, a claim for damages not readily ascertainable by the contents of the motion for summary judgment and, hence, in the Court's view, there is a serious question whether this Court, as opposed to a factfinder, may properly make the factual findings necessary for an award of punitive damages. Therefore, the Court finds the Defendants liable to U.S. Bank for fraud but concludes a jury should determine the damages.

## VII.  CONCLUSION

The Court GRANTS in part and DISMISSES in part U.S. Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2005-4's Motion for Summary Judgment (ECF No. 76). The Court GRANTS U.S. Bank's Motion for Summary Judgment as to Count I of the Complaint. The Clerk shall enter declaratory judgment on Count I as follows:

(a)  The Court DECLARES the Discharge of Mortgage, Waiver of Foreclosure, and Administrative Declaratory Judgment filed with the York County Registry of Deeds on July 1, 2020, unauthorized, forged, fraudulent, and void ab initio;

(b)  The Court STRIKES from the public records the Discharge of Mortgage, Waiver of Foreclosure, and Administrative Declaratory Judgment filed with the York County Registry of Deeds on July 1, 2020;

(c)  The Court DECLARES the Mortgage and the lien created thereby reinstated as a priority lien in the same priority as if the Discharge of Mortgage, Waiver of Foreclosure, and Administrative Declaratory Judgment were never filed.

The Court GRANTS U.S. Bank's Motion for Summary Judgment as to Count II of the Complaint on the question of liability only.  The Court DISMISSES without prejudice U.S. Bank's Motion for Summary Judgment as to Count II on the request for fraud damages.  The Court ORDERS the Clerk's Office to schedule the damages portion of Count II for jury trial in the ordinary course.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of July, 2021